UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------- x
OMETRIUS PEREZ,                                                :
                                                               :
                                    Plaintiff,                 :
                                                               :    INITIAL REVIEW
          -against-                                            :    ORDER RE:
                                                               :    COMPLAINT
ANGEL QUIROS, et al.,                                          :
                                                               :    24-CV-651 (VDO)
                                    Defendants.                :
------------------------------------------------------------- x
```

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Ometrius Perez, a sentenced inmate incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this case *pro se* pursuant to 42 U.S.C. § 1983 against ten defendants, Commissioner Angel Quiros, the Department of Correction, Correctional Health Services Program Director Colleen Gallager, Warden Amonda Hannah, Counselor Supervisor and ADA Coordinator Michael Calderon, Warden Kristane Barone, ADA Coordinator Jane Walsh, Deputy Warden Damian Doran, Warden John Dougherty, and ADA Coordinator Jane Vareen. Plaintiff asserts claims for violation of his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. He seeks damages as well as declaratory and injunctive relief. All individual defendants are named in their official capacities only. ECF No. 1 ¶ 13.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28

U.S.C. §§ 1915(e)(2)(B), 1915(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

## I. FACTUAL BACKGROUND

While the Court does not set forth all of the facts alleged in Plaintiff's Complaint (ECF No. 1), it summarizes his basic factual allegations here to give context to its ruling below.

Plaintiff was born with severe myopia and has been certified as legally blind in New York since 2008, and in Connecticut since 2012. *Id.* ¶ 87. In 2010, he was diagnosed with cone-rod dystrophy. *Id.* His visual acuity with best correction is 20/1250 for distance, and 20/800 for close. *Id.* ¶ 88. Plaintiff has been prescribed eyeglasses with polarized tints, contact lenses, CCTV 20" monitor, Beecher 8x telescope eyeglasses, scanner/printer, a laptop computer with a 15-17" screen, Zoomtext software for the blind with speech, 4x magnifier, sight cane, and digital magnifier. *Id.*

Plaintiff has been assigned a Level 4 security classification which requires that he be confined in his cell twenty-one hours per day, seven days per week. *Id.* ¶ 90. Other inmates similarly confined are permitted to read, study, watch television, worship, and write while so confined. *Id.*

On April 1, 2019, Plaintiff entered a settlement agreement in *Perez v. Arnone*, No. 3:12-CV-1591(VLB), permitting Plaintiff to possess and use his laptop computer in his cell on a permanent basis. *Id.* ¶ 14. As part of the settlement agreement, Plaintiff would provide correctional staff all of his passwords and permit regular and unplanned inspections of his computer. *Id.* ¶ 15.

On June 1, 2019, Plaintiff submitted a request for reasonable accommodation to Defendant Calderon, the facility ADA Coordinator, for a laptop computer, printer, and scanner. *Id.* ¶ 16. A few days later, Plaintiff was given a laptop computer and power cord. *Id.* ¶ 17. Plaintiff was unable to use the computer as someone had installed several passwords which had not been given to Plaintiff. *Id.* ¶ 18. Plaintiff submitted a second request for reasonable accommodation seeking the user, administrator and owner passwords and computer instruction manual, but Defendant Calderon did not respond. *Id.* ¶¶ 18-19.

On June 5, 2019, Defendant Calderon provided Plaintiff a printer and told him he could only use the printer in the counselor's office. *Id.* ¶ 20. He also provided Plaintiff the user password and a mouse but said he could not find the instruction manual. *Id.* On June 18, 2019, Plaintiff requested the administrator password so he could activate the CD ROM drive to receive and read large-print books and play CDs on his computer but received no response. *Id.* ¶¶ 22-23.

In August 2019, Defendant Hannah ordered that the printer be moved from the counselor's office to a location that would afford Plaintiff more frequent access and informed Plaintiff that the Department of Correction does not provide scanners to inmates. *Id.* ¶ 25. Defendant Calderon attempted to get Plaintiff to agree to the printer being placed in cell G121 where Plaintiff could use only during his first shift recreation periods. Plaintiff refused. *Id.* ¶ 24. In September 2019, Defendant Hannah ordered that password used to block the CD-ROM be removed but did not provide Plaintiff the password to access the drive. *Id.* ¶ 26.

On September 24, 2019, Plaintiff attempted to use his printer in cell G121 but it would not turn on. *Id.* ¶ 27. In response to Plaintiff's complaint, maintenance staff checked the outlets and determined that the outlets were working properly. *Id.* ¶¶ 28-29. Plaintiff then discovered

3

that someone had poured water into the printer. *Id.* ¶ 29. For a week in October 2019, Plaintiff was denied access to any of his auxiliary aids stored in cell G121 because the facility was on lockdown. *Id.* ¶ 30.

On November 30, 2020, Plaintiff was moved to another housing unit and was denied all access to his printer which remained in cell G121. *Id.* ¶ 31. On January 17, 2021, Plaintiff was sent to administrative segregation and all of his auxiliary aids, including prescription eyeglasses, contact lenses, 4x magnifier, digital magnifier, sight cane, and laptop computer, were confiscated. *Id.* ¶ 32. For the nine days he was in administrative segregation, Plaintiff was unable to read or write as other inmates in segregation were allowed to do. *Id.* ¶¶ 33-34.

On January 25, 2021, Plaintiff was transferred to MacDougall-Walker Correctional Institution ("MacDougall") and housed in a cell that did not accommodate his disability. *Id.* ¶ 35. The following day he was given his personal property but discovered that his 4x magnifier was broken, his laptop computer had been sent to the main office in Wethersfield, and his printer had been left at Garner Correctional Institution ("Garner"). *Id.* ¶ 36. Plaintiff was given his laptop computer on February 5, 2021. *Id.* ¶ 38. On February 10, 2021, in response to Plaintiff's requests for reasonable accommodation, Defendant Walsh told him there was no available printer for him to use. *Id.* ¶ 39.

On February 17, 2021, Plaintiff was returned to Garner; he was denied access to his printer for eight days. *Id.* ¶¶ 41-42. On February 25, 2021, the counselor located the printer and stored it in her office but denied Plaintiff access to it because she had to attend a meeting. *Id.* ¶ 44. In April 2021, Plaintiff was denied access to his printer for two days while staff administered COVID vaccinations in the housing unit and for fourteen days while he was on close quarters contact quarantine status. *Id.* ¶¶ 45-48.

4

In September 2021, Plaintiff was transferred, along with his printer, to E-Block. *Id.* ¶ 49. The counselor told Plaintiff that the printer may have to be stored in his office or in cell E121, which was used for inmate legal calls and access to the unit typewriter. *Id.* ¶ 52. Plaintiff objected to both locations because inmates could tamper with the printer if left in cell E121 and he would not have access to the printer in the counselor's office when the counselor was not on duty or in the unit. *Id.* ¶ 53. As Plaintiff did not have a cellmate, the counselor agreed to permit Plaintiff to keep the printer in his cell until he could discuss the matter with the Unit Manager. *Id.* ¶ 54. From September 27, 2021 until he returned to MacDougall on February 8, 2022, Plaintiff was housed alone and retained his printer in his cell. *Id.* ¶ 56.

On February 9, 2022, Plaintiff spoke with Defendant Barone about the absence of his auxiliary aids. *Id.* ¶ 58. In addition to requesting the aids, Plaintiff asked that he be moved to a cell closer to the disability shower, that a three-prong outlet be installed near the desk, and that he be permitted to have his printer in his cell. *Id.* Defendant Barone denied the requests. *Id.* ¶ 59. The unit manager, however, told Plaintiff that he would be moved closer to the disability shower when a cell became available. *Id.* ¶ 60. That afternoon, Plaintiff was provided most of his auxiliary aids, but not the printer. *Id.* ¶ 61. The following day, Plaintiff learned that the printer would be stored outside of the housing unit and Plaintiff would have access to it during his recreation periods. *Id.* ¶ 62. The plan was put in place and Plaintiff was able to access his printer after February 22, 2022. *Id.* ¶ 66. In October 2022, Plaintiff submitted requests for reasonable accommodation to Defendant Vareen again seeking retention of his printer in his cell and installation of a three-prong outlet but received no response. *Id.* ¶ 69.

On July 14, 2023, Plaintiff was transferred to Cheshire Correctional Institution ("Cheshire") and was told he would be called to retrieve his property and medical equipment

the following Monday. *Id.* ¶ 71. On July 17, 2023, Plaintiff spoke to the unit manager about his need for his eyeglasses and laptop computer and printer for permanent in-cell use but was told that the printer would likely be stored in the counselor's office. *Id.* ¶ 72. Plaintiff also told the unit manager that he required an inmate escort for traveling within the facility and requested a specific inmate. *Id.* ¶ 73.

Later on July 17, 2023, Plaintiff received his laptop and eyeglasses but not his printer. *Id.* ¶ 75. The printer was stored in the counselor's office. *Id.* ¶ 77. On July 21, 2023, ADA Coordinator Blackstock told Plaintiff that he was not on single-cell status, but that he would be housed alone for the foreseeable future. *Id.* ¶ 78.

On July 24, 2023, ADA Coordinator Blackstock brought the printer to Plaintiff's cell to enable him to print various documents and then removed the printer. *Id.* ¶ 80. He told Plaintiff that Defendant Gallagher had determined that possession of the printer in his cell was a custody issue that would be determined by the warden. *Id.* Plaintiff was able to use the printer only three times between July 14, 2023 until he returned to MacDougall on July 31, 2023. *Id.* ¶ 81.

On August 3, 2023, Plaintiff was given all of his auxiliary aids except the printer. *Id.* ¶ 82. Plaintiff alleges that he is routinely being denied "permanent and unobstructed in-cell use and in programs and services throughout the facility" of his CCTV 10" monitor, Beecher 8x telescope eyeglasses, printer and scanner. *Id.* ¶ 84.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a government entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir .2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (per curiam) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g., Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and

7

provide "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Harden v. Doe*, No. 19-CV-3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

### III.   DISCUSSION

Plaintiff asserts two ADA claims against the Department of Correction and nine correctional officials in their official capacities. In both claims he contends that Defendants denied him reasonable accommodations and auxiliary aids for in-cell use as well as use in programs and services throughout the facility. Specifically, he argues that Defendants have not provided him the scanner, CCTV monitor, and telescope eyeglasses; have refused to remove passwords preventing access to a CD-ROM drive or install a three-prong outlet near the desk; and assigned him a cell far from the handicap shower. In the second claim, Plaintiff elaborates on the effect of the denials and also alleges that he has been assigned cellmates who monopolize the one desk and chair in the cell preventing Plaintiff from using his computer at the desk.

To establish a prima facie violation under Title II of the ADA, Plaintiff must show (1) that he is a qualified individual with a disability, (2) Defendants are entities subject to the ADA, and (3) that he was denied the opportunity to participate in or benefit from services, programs, or activities of Defendants, or that Defendants "otherwise discriminated against him by reason of his disability." *Wright v. New York Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). There are "three available theories" of liability for a Title II ADA claim, intentional discrimination or disparate treatment,

disparate impact, and failure to make a reasonable accommodation. *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021).

For purposes of initial review, the Court considers Plaintiff an individual with a qualifying disability who requires accommodation for his visual impairment. The Department of Correction and its officials in their official capacities are entities subject to the ADA. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998) (holding that the ADA "unmistakably includes State prisons and prisoners within its coverage"); *Henrietta D.*, 331 F.3d at 288-89 (holding that ADA does not preclude claims for prospective injunctive relief against state officials in their official capacities). At this early stage of litigation, the Court will permit Plaintiff to proceed on his ADA claims for damages as well as declaratory and injunctive relief against all defendants for their failure to provide the accommodations. *See Sanchez v. Mulligan*, No. 22-2923, 2024 WL 2890742, at *3 (2d Cir. June 10, 2024) (summary order) (noting that damages may be appropriate against state official in official capacity on ADA claim if alleged conduct also violated the Fourteenth Amendment).

## IV.     CONCLUSION

The case will proceed on the ADA claim for damages against all Defendants on the ADA claims for damages, declaratory and injunctive relief.

The Court enters the following additional orders.

(1)     **The Clerk shall** arrange for service of summons and a copy of the Complaint and this Order on all Defendants in their official capacities and the Department of Correction at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT, 06016 within twenty days from the date of this order.

(2)     **The Clerk shall** send Plaintiff a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

(9) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Plaintiff.

**SO ORDERED.**

Hartford, Connecticut
June 24, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge